Pines and Associates
Michael T. Pines, SBN #77771
701 Palomar Airport Rd., Ste. 300
Carlsbad, Ca.  92011
Telephone: (760) 453-0131
Facsimile: (760) 301-0093
michaeltpines@gmail.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anthony, Marc & Marla | ) |
| Aguirre, Carlos | ) CASE NO: **'11 CV 0740 BEN WVG** |
| Biggins, Jeffrey | ) |
| Bolanos, Emiliano & Gloria | ) COMPLAINT AND DEMAND FOR |
| Butler, Robert & Carrie | ) JURY TRIAL |
| Close, Donald & Patti | ) |
| Coronado, Ricardo & Estella | ) |
| De La Torre, Manuel & Marcia | ) |
| Dougherty, Paul | ) |
| Earl, Jim & Danielle | ) |
| Earl, Dan & Rachel | ) |
| Edwards, Randall & Betty Sue | ) |
| Evans, Richard | ) |
| Felix, Ruben | ) |
| Giorgi, Gregory | ) |
| Gonsalves, Mary | ) |
| Halajian, Barry | ) |
| Hekhamenesh, Jahangir | ) |
| Hirou, Timothy & Nora | ) |
| Hughes, Paul | ) |
| Ivar, Illiyun | ) |
| Klein, Monica | ) |
| Combs, Chris | ) |
| Koulinich, Oksana | ) |
| Kreitzer, David & Debra | ) |
| Kuehl, Pat | ) |
| Mata, Luz | ) |
| McVay, Michael | ) |

1

Mitchell, Jon                                         )
Morthel, Emily                                        )
Munoz, Jose & Linda                                   )
Naranjo, Thomas                                       )
Nasirova, Valida                                      )
Osbourne, Gloria                                      )
Parisi, Joseph                                        )
Powers, Michelle                                      )
Reth, Karl                                            )
Rhodes, Lynette                                       )
Rocha, Eva                                            )
Salcedo, Horatio & Isabel                             )
Scott, Marvin                                         )
Stewart,  Aubree                                      )
Tarsha, nancy                                         )
Tippit, Carl & Alicia                                 )
Turney, Wendy                                         )
Valenzuela, Sara                                      )
Washington, James & Giselle                           )
Whitney, Judy                                         )
Yarpezeshkan, Hassan & Maryam                         )
Zepeda, Jacob                                         )
Zepeda, Rene                                          )
Giovanna Miamone                                      )
Cara Templin                                          )
                                                      )
            Plaintiffs,                               )
                                                      )
    vs.                                               )
                                                      )
Leslie Gladstone, Tiffany Carroll,  Gary              )
Slater, David Ortiz                                   )
                                                      )
            Defendants.                               )

## GENERAL ALLEGATIONS

1.     Christian McLaughlin ("Mclaughlin") is an inexperienced and relatively

new attorney.  He has a live in girl friend, Lisa De Benedittis ("De

2

1   Benedittis") that is mentally unstable and filled with hate and

2   vindictiveness toward the world.  They conspire to violate federal and

3   state laws trying to use McLaughlin's knowledge of the law to avoid

4   adverse consequences.

5   2.   Defendants aided and abetted them in their criminal activities specifically

6        including but not limited to breaking, entering, and looting the law office

7        of Pines and Associates, and stealing confidential attorney-client

8        information and other highly confidential information that is considered

9        "identity theft".

10  3.   Michael T. Pines ("Pines") is an attorney known to be one of the few

11       experts in the legal issues involved in the current foreclosure crisis.

12       Pines shared office space with McLaughlin and worked with him in

13       connection with McLaughlin's law firm "Legal Objective" for a period of

14       time.  Pines invited McLaughlin to participate in legal seminars as a

15       presenter. McLaughlin eagerly did so admitting it would be a great

16       opportunity to be associated with someone with Pine's experience.

17  4.    Pines discovered that De Benedittis was mentally unstable, dishonest

18       and was engaging in unlawful activity so decided to dissolve the

19       relationship with McLaughlin.  Pines created his own new law firm

20       "Pines and Associates".

21  5.   Ever since separating, Defendants have been on a continuous campaign

22       to interfere with Pines' law practice, legal education business, harassing

23       him, his legal clients, his employees, and people Pines does business

24       with.

25  6.    This included an assault on an assistant.  The police did an investigation

26       and De Benedittis was arrested and placed into custody. In harassing

27       Pines, Defendants have used electronic means in violation of federal law.

7.   Pines had filed personal bankruptcy to reorganize his real estate affairs.

8.   Pines formed Pines and Associates, APC after the bankruptcy Petition was filed.

9.   Pines formed Precedent Legal Systems a separate company after the bankruptcy Petition was filed in order to get a "fresh start" with P&A and Precedent in new businesses.

10.  P & A and Precedent occupied a building ("Building") owned by Pines, which they were maintaining by paying all expenses for the building and managing tenants at no cost.

11.  Leslie Gladstone was appointed bankruptcy trustee and Gary Slater her counsel.

12.  McLaughlin and De Benedittis solicited Slater and Gladstone to participate in a criminal scheme and Slater and Gladstone agreed and conspired to harm Pines, P&A, Precedent, and Plaintiffs.

13.  Gladstone obtained a court order for a Writ of Possession in the bankruptcy court which specifically did NOT include any personal property at all, or property of P&A or Precedent (as noted by the jude on the record.)

14.  On or about January 15, 2011, McLaughlin, De Benedittis, Gladstone and Slater went to the Building, and used law enforcement to evict P&A and Precedent.  (McLaughlin, De Benedittis, Gladstone, and Slater are collectively "Conspirators").

15.  Conspirators changed the locks, removed property belonging to Pines including confidential information which would be considered "Identity Theft", the property Plaintiffs, of Pines and Associates, APC., that was not property of the bankruptcy estate, and the property of Precedent that was not part of the bankruptcy estate, and vandalized the property.

16.   Conspirators took the computer server P&A used to practice law, confidential client files, and property belonging to clients, employees and other third persons, thereby crippling P & A's ability to practice law. Filing deadlines were missed, court appearances were missed, and communications with clients were cut off, causing P & A and Precedent and legal clients severe damage.

17.   Conspirators locked out tenants at the building including a school for teaching Spanish to young children and a Sprint cell phone site which also was not included by the bankruptcy court in it's order.

18.   De Bedenetittis spends most of her day contacting people P&A and Precedent do business with to try and interfere with the business of them by attacking them on the Internet and has for a long time.

19.   Defendants and each of them aided and abetted in these criminal acts by McLaughlin and De Benedittis based on false claims by McLaughlin and De Benedittis but rather than investigate and prosecute them for their criminal acts, they engaged in an ongoing pattern to aid and abet them even long after they had knowledge of their criminal conduct, and even after De Benedittis was arrested in their presence.

**JURISDICTION AND VENUE**

20.   The Federal Court has subject matter jurisdiction based upon federal questions under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA ")and other federal statutes.

21.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that all, or a substantial part, of the events giving rise to the claims asserted herein occurred in this judicial district.

22.   This Court has personal jurisdiction over the parties as all Defendants engage in business within the State of California, County of San Diego,

1      and thus have sufficient contacts.

2   **23.**   This court has pendent jurisdiction over state claims.

3                                    **PARTIES**

4   24.   Plaintiffs are all legal clients or employees of Pines and Associates

5          residing in California.  Additional Plaintiffs will be added as they are

6          processed.

7   25.   Defendant Leslie Gladstone is an attorney doing business in and a

8          resident of San Diego, California.

9   26.   Defendant Gary Slater is an attorney doing business in and a resident of

10         San Diego, California.

11  27.   Defendant David Ortiz is an attorney doing business in and a resident of

12         San Diego, California.

13  28.   Defendant Tiffany Carroll is an attorney doing business in and a resident

14         of San Diego, California.

15                           **FACTUAL ALLEGATIONS**

16  29.   In about June of 2009, McLaughlin, a relatively new attorney, requested

17         Pines enter into a relationship to consult and help him in the practice of

18         law.  McLaughlin had a law practice he called Legal Objective.

19  30.   At that time, Pines was not actively practicing and was a professional real

20         estate investor.

21  31.   McLaughlin represented that he was newly licensed to practice law, had

22         been practicing bankruptcy law with, and under the auspices of, a more

23         experienced bankruptcy attorney and been doing loan modifications in a

24         manner he believed was unethical and possibly unlawful and wanted

25         Pines' help.

26  32.   McLaughlin stated and promised he was in the process of returning all

27         fees charged to loan modification clients to correct the unethical behavior

1      so that he hoped none would complain to the State Bar.

2   33.  Since that time, a new statute was passed that would in fact have made

3      McLaughlin's practice specifically illegal and unethical.

4   34.  Pines does not know if McLaughlin has returned all the money to his

5      former clients.

6   35.  McLaughlin stated he wanted to be involved with Pines to try and learn

7      how to practice law and would use his best efforts to support the law

8      practice by handling routine Chapter 7 and 13 bankruptcies which was all

9      he felt competent to do while he tried to learn from Pines and would

10      assist when he could in foreclosure defense and debt relief by other

11      means including litigation.

12   36.  Since Pines was not practicing law, McLaughlin offered to add Pines to

13      his existing professional liability policy, use the name "Legal Objective"

14      for the new venture, and provide a few computers and some office

15      furniture to induce Pines to work with him.

16   37.  Pines owned an office building in Encinitas ("Office") which Pines said

17      could be used at least temporarily to operate the business. Pines agreed to

18      help McLaughlin and contribute his experience, expertise, and by

19      contributing some capital but only part time so Pines could continue to

20      operate his real estate business.

21   38.  McLaughlin agreed to devote his full time, energy, and work to the

22      venture, and to deposit any and all fees earned from practicing law into a

23      joint bank account for use to pay expenses and at such time as net profits

24      were earned to share them with Pines in a manner that was fair and

25      equitable given Pines experience and expertise. McLaughlin was quick to

26      include Pines in the professional liability policy.

27   39.  Shortly after commencing business in the joint venture Pines was

1    contacted by the Chairman of the San Diego County Bar Real Estate

2    Committee and asked to provide a continuing education course for

3    attorneys on the area of foreclosure defense and debt relief and Pines

4    agreed.

5    40.   A program ("Program") was planned and held a the San Diego County

6    Bar in September 2009, under the name Legal Objective since that was

7    the name McLaughlin had convinced Pines to use temporarily for

8    anything related to the practice of law or the Program since that was what

9    the professional liability policy was connected to.

10   41.   Prior to that time the name Legal Objective had no significance except it

11   had been advertised as a bankruptcy and loan modification company and

12   had a poor reputation if any which Pines hoped he could help

13   McLaughlin improve.

14   42.   Pines planned, and wrote the vast majority of the materials for the

15   Program, and Pines managed the Program, including obtaining approval

16   from the State Bar for continuing education for attorneys, with only some

17   small amount of help from McLaughlin who asked to write the written

18   materials for, and speak about bankruptcy and loan modifications as it

19   related to the current real estate crisis.

20   43.   Pines was the leader of the Program and spoke for the vast majority of

21   the time at the Program.

22   44.   Surprisingly, over 200 attorneys attended the Program and praised it

23   highly, especially Pines.  Pines began to realize there appeared to be a

24   great need for his experience, expertise, and for legal education in this

25   area of the law.

26   45.   Pines decided to further provide legal education in the area of foreclosure

27   defense and debt relief McLaughlin asked if he could remain involved.

1   46.   Pines also decided to take responsibility for a few clients and represent

2         them in disputed foreclosure defense including clients by the name of

3         Carder, Quintero, Kuehl, and Bohl.  Carder, Quintero, and Bohl were

4         initiated through McLaughlin.  Kuehl was initiated through Pines.

5         McLaughlin also requested Pines help him with other cases referred to

6         him.

7   47.   It was made clear to the clients that Pines would take the lead in

8         representing them and that McLaughlin could not due to his lack of

9         experience in litigation.

10  48.   Pines asked McLaughlin to perform some relatively simple tasks related

11        to the clients' cases and his work was far below the standards of any

12        attorney purporting to have experience and expertise in litigation so

13        requested that McLaughlin refrain from being directly involved further,

14        which he said he would due to his lack of experience and the danger of

15        damaging clients.

16  49.   Pines associated attorneys who were experienced litigators to help with

17        those cases.  McLaughlin had never known these people before Pines got

18        them involved.

19  50.   Pines took the lead in representing the clients in any and all litigation.

20        McLaughlin has had no significant involvement, as he would be

21        incompetent to do so due to his lack of experience.  He did not make any

22        court appearances asking Pines to do so.

23  51.   Pines also took the lead in planning and running continuing education

24        events for attorneys and others at Chapman College School of Law,

25        U.S.C. School of Law, and U.C. Davis School of Law.

26  52.   Pines began to work with the only other experts he could find in this area

27        of law, including doing a radio show and other things which furthered the

reputation of Pines whose name was now associated with Legal Objective due to the insistence of McLaughlin. McLaughlin had no involvement with this whatsoever.  Pines was becoming a public figure which has continued and expanded greatly to date.

53.     After it became clear that this could be a profitable opportunity, and Pines was becoming a public figure, McLaughlin and De Benedittis began to plan to steal the opportunity for themselves. Without Pines' prior knowledge or consent, McLaughlin got De Benedittis involved claiming she could help with marketing and she did so, while taking as much information as she could to further the conspiracy to convert the opportunity for the sole benefit of herself and McLaughlin.

54.     McLaughlin began to demand that have equal authority and involvement in planning coordinating and sharing revenues from the Programs.

55.     Pines would not agree explaining that McLaughlin did not have nearly the experience or expertise needed and that to the extent he had tried to help with handling the client cases and the Programs; he had done more harm than good.

56.     McLaughlin freely admitted to Pines that De Bedenittis was good at acts constituting "cyber crime" and bragged about it, showing Pines an example.  He also stated she controlled him personally and he feared her.

57.     Pines stated that they would have to part ways and hoped McLaughlin would cooperate in an orderly, and professional accounting and dissolution of Legal Objective.  McLaughlin said he would.

58.     However, McLaughlin and De Benedittis had already been planning to steal as much as they could for their sole and exclusive benefit. Pines requested the bookkeeper prepare an accounting and then meet with McLaughlin and Pines to begin the process of dissolution and scheduled

1     a meeting to discuss it with McLaughlin.

2   59.   If a final mutually agreeable dissolution and settlement could occur,

3     Pines stated McLaughlin might be able to continue using the name Legal

4     Objective instead of dissolving it; however, Pines wanted to distance

5     himself from this name since it might be more associated with

6     McLaughlin who had been previously used the name Legal Objective,

7     and McLaughlin was incompetent in the area of foreclosure defense and

8     debt relief and Pines no longer wanted his name associated with

9     McLaughlin or Legal Objective in any way.

10   60.   Pines further stated McLaughlin could continue to stay in Pines' Office

11     until the dissolution was complete.

12   61.   McLaughlin and De Benedittis then sped up their action their plan to

13     steal as much of the business opportunity as they could which is ongoing

14     as of the time of filing this complaint.

15   62.   McLaughlin missed the meeting with the bookkeeper.

16   63.   McLaughlin and De Benedittis convinced two key employees, Bossworth

17     and Novak to leave and work exclusively for them as well as Defendant

18     Baker an attorney. McLaughlin and De Benedittis removed Pines from

19     the malpractice insurance.

20   64.   At the time, Pines was representing Carder. McLaughlin began to try and

21     take over the representation of Carder on his own, excluding Pines from

22     involvement.  McLaughlin insisted on also taking over the representation

23     of the other legal clients named above except Kuehl.  Pines tried to

24     inform the clients it was their decision, but McLaughlin interfered

25     making false and defamatory statements so Pines withdrew from the

26     cases except Kuehl who elected to stay with Pines.

27   65.   McLaughlin stated they rented new office space and refused to provide

1    Pines with the address, so they could conceal their activities. They

2    published a false office address on the Internet for Legal Objective.

3    66.   McLaughlin told Pines he was moving out but did not tell him he planned

4          to take any and all assets belonging to Legal Objective and the joint

5          venture including all written materials, and other items related to the

6          Programs for himself and do Programs on his own.  McLaughlin stated it

7          was his position that legally he was entitled to the exclusive right of all

8          property at the Office because activities had been conducted under the

9          name Legal Objective which Pines had no right to.

10   67.   When Pines found out about McLaughlin's plans, he locked down the

11         computers to try and prevent McLaughlin from stealing the software and

12         data.

13   68.   McLaughlin found out about this and called the police.

14   69.   The police came and McLaughlin made many false statements which are

15         included in the police incident reports.  The police told McLaughlin to

16         leave and would supervise his taking property he claimed belonged to

17         him to keep the peace. McLaughlin took property belonging to Pines.

18   70.   Pines objected to many of the items and tried to explain that none of the

19         items belonged exclusively to McLaughlin, but had no choice but to

20         allow removal of the items from the office.

21   71.   McLaughlin filed a false police report trying to have Pines arrested and

22         has done so at other times since then.

23   72.   McLaughlin shut Pines out of e-mail, and telephone and removed as

24         much of the written materials books, software and data as he could and

25         has continued with his efforts to exclude Pines from such to the extent he

26         could and has demanded that Pines not use them himself.

27   73.   Pines gave clients of Legal Objective notice he could no longer represent

1   them.

2   74.   De Benedittis filed several applications for harassment restraining orders

3         against Pines and his employees containing false and outrageous

4         statements.

5   75.   De Benedittis frequently defamed Pines on the Internet and elsewhere

6         making false, outrageous, and often using highly offensive language.

7   76.   De Benedittis continually contacts clients and business associates of

8         P&A and Precedent and makes false and misleading statements, often

9         containing foul language.

10  77.   McLaughlin had stated that he and De Benedittis conceal their home

11        address at all times to avoid being served with legal process and to hide

12        their unlawful activities.

13  78.   De Benedittis followed Pines and an employee to a Program, ran into the

14        room and circulated the defamatory material and ran before the police

15        arrived.

16  79.   After this, Pines filed bankruptcy to reorganize his own real estate affairs.

17  80.    De Benedittis and McLaughlin began appearing at bankruptcy hearings

18        to harass Pines and convinced Defendants to aid and abet them in their

19        criminal activity.

20  81.   De Benedittis and McLaughlin solicited Leslie Gladstone a bankruptcy

21        trustee and Gary Slater, her attorney to become involved in their

22        conspiracy to harm Pines, Pines and Associates, Legal Precedent, and

23        others and they agreed.

24  82.   At a "341(a) hearing, De Benedittis appeared and assaulted Pines'

25        assistant, Plaintiff, Giovana Miamone, and was arrested.

26  83.   In conspiracy with McLaughlin and De Benedittis, Gladstone and Slater

27        then obtained a court order for a Writ of Possession ("Writ") for the

1     Building.

2     84.    The Court ordered the Writ to be recalled pending further proceedings.

3     85.    Instead, on or about January 15, 2011, they used the Writ to evict P&A

4            and Precedent from the Building and steal all personal property at the

5            Building. They also locked out the tenants in the Building.

6     86.    The next day, De Benedittis and McLaughlin appeared at the Office with

7            a moving company.

8     87.    Pines called the police.  Prior to the arrival of the police, an employee of

9            the moving company threatened Pines and also the Bankruptcy judge

10           vowing revenge if he was arrested.  He stated he was acting under the

11           direction and control of the Defendants who had him "under contract".

12    88.    He assaulted Pines by shoving a hand truck at him.  The San Diego

13           County Sheriff incident report is S 8910597.

14    89.    Throughout the three day weekend, Defendants looted the Building,

15           stealing the computer server, confidential attorney-client files,

16           confidential employee information, and other confidential information

17           that is considered "identity theft", and prevented P&A from performing

18           essential tasks for clients thereafter.

19    90.    Court deadlines were missed, court appearances were missed, and legal

20           clients of P&A were severely damaged.

21    91.    Thereafter, McLaughlin and De Benedittis used the Carlsbad Police to

22           harass and arrest Pines numerous times making false police reports.

23    92.    As a result of said defendants' misconduct, Plaintiffs are entitled to

24           declaratory and injunctive relief preventing said defendants from using

25           property belonging to, including but not limited to the use of e-mail,

26           telephones, legal files, and interfering with Plaintiffs' use of any property

27           including confidential information.

93.  McLaughlin and De Benedittis are currently under criminal investigation by the Carlsbad Police, case #11-01573.  However, even while this investigation was and is pending, certain other Defendants at the Carlsbad Police continued to harass Pines at the prompting of McLaughlin and De Benedittis in a classic case of "the right hand not knowing what the left is doing".

## FIRST CAUSE OF ACTION
### (Violation of The FAA Against All Defendants)

94.  Plaintiffs re-allege and incorporate herein by reference each and every allegation contained above of the Complaint as though set forth in full.

95.  The CFAA generally prohibits (1) the unauthorized accessing (2) of a "protected" computer (3) with the intent either (a) to obtain information, (b) to further a fraud, or (c) to damage the computer or its data.

96.  The Defendants and each of them, unlawfully stole the computers from Pines and Associates office, copied the hard drives, distributed the information to McLauhlin and De Benedittis who in turn have used it extensively to harass, defraud, and defame Plaintiffs and have failed and refused to return or destroy the information and copies thereof.

97.  As a result, Plaintiffs have sustained damages far in excess of $5000 entitling Plaintiffs to damages, declaratory relief, injunctive relief and punitive damages.

## SECOND  CAUSE OF ACTION
### (Conversion As Against All Defendants)

98.  Plaintiffs re-allege and incorporate herein by reference each and every allegation contained above of the Complaint as though set forth in full.

99.  Defendants and each of them have aided and abetted in wrongfully

converting to their own use property belonging to Plaintiffs, Pines, P&A, and Precedent, and have wrongfully and intentionally excluded them from use.

100.   As a result, Plaintiffs have sustained damages far in excess of $5000 entitling Plaintiffs to damages, declaratory relief, injunctive relief and punitive damages.

## THIRD CAUSE OF ACTION

### (Trespass As Against All Defendants)

101.   Plaintiffs re-allege and incorporate herein by reference each and every allegation contained above of the Complaint as though set forth in full.

102.   Defendants and each of them aided and abetted McLaughlin and De Benedittis in entering  into the Building without any proper legal authority to do so.

103.   As a result, Plaintiffs have sustained damages far in excess of $5000 entitling Plaintiffs to damages, declaratory relief, injunctive relief and punitive damages.

## FOURTH CAUSE OF ACTION

### (Defamation Against All Defendants)

104.   Plaintiffs re-allege and incorporate herein by reference each and every allegation contained above of the Complaint as though set forth in full.

105.   Defendants and each of them aided and abetted McLaughlin and De Benedittis in making false statements verbally and in writing and publicized such false statements to third persons and on the Internet.

106.   As a result, Plaintiffs have sustained damages far in excess of $5000 entitling Plaintiffs to damages, declaratory relief, injunctive relief and punitive damages.

## TENTH CAUE OF ACTION

## FRAUD

## (As Against All Defendants)

107. On or about March 11, 12, 13, Mclaughlin and De Benedittis created an e-mail account entitled mpines@yahoo.com to give the impression e-mails from the address would be sent by Plaintiff.

108. Thereafter, McLaghlin and De Benedittis have continued to create false identities for e-mails and on the Internet to harass and damage Plaintiffs and Defendants have and continue to aid and abet them.

109. As a result, Plaintiffs have sustained damages far in excess of $5000 entitling Plaintiffs to damages, declaratory relief, injunctive relief and punitive damages.

WHEREFORE, Plaintiffs pray as follows:

1. For compensatory damages according to proof;

2. For special damages in excess of $5,000,000 according to proof;

3. For punitive and exemplary damages according to proof;

4. For temporary and permanent injunctive relief;

5. For Declaratory Relief concerning the respective rights, obligations and duties of the parties concerning the confidential information stolen by Defendants.

7. For interest to the extent allowable by law;

8. For costs of suit including attorneys fees; and

9. Any other and further relief that the Court deems just proper.

DATED:   April 8, 2011                    PINES & ASSOCIATES

_/s/_____

By:  Michael T. Pines, Esq.

17

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Anthony

## DEFENDANTS
Gladstone

**(b)** County of Residence of First Listed Plaintiff    San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Pines and Asssociates
Michael T. Pines
701 Palomar Airport Rd., Ste. 300

Attorneys (If Known)

**'11 CV 0740 BEN WVG**

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN    (Place an "X" in One Box Only)

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
18 U.S.C. § 1030
Brief description of cause:
Compter Fraud and Abuse Act

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE  William Hayes    DOCKET NUMBER 3:11-00474

DATE    SIGNATURE OF ATTORNEY OF RECORD

April 9, 2011    /s/ Michael T. Pines

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | | | | |